# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

ABBVIE INC.; ALLERGAN, INC.;
DURATA THERAPEUTICS, INC.; ABBVIE
PRODUCTS LLC; PHARMACYCLICS LLC;
and ALLERGAN SALES, LLC,

          *Plaintiffs*,

   v.

PETER NERONHA, in his official capacity as
Attorney General of the State of Rhode Island,
and DAVID BERGANTINO, in his official
capacity as Auditor General of the State of
Rhode Island,

          *Defendants*.

Case No. 1:25-cv-00388

## PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

The order in *AbbVie, Inc. v. Frey* does not engage with many arguments AbbVie made in that case (and in this one). 1:25-CV-00416 (D. Me. Sept. 23, 2025) ("*Frey*"). Defendants now invite this Court to make the same mistakes. Because the order is neither binding nor persuasive, this Court should not look to it for guidance in deciding AbbVie's motion seeking preliminary injunctive relief against enforcement of Chapter 288.

***Pricing and delivery.*** Most fundamentally, *Frey* mistakenly characterized the State law at issue as one of delivery alone rather than delivery at a particular price. Op. at 18. That conceptual error infects the remainder of the opinion. Laws like Chapter 288 do not merely regulate post-sale delivery. They compel manufacturers to accept orders for delivery at a particular price ***before*** a sale is complete, and therefore require manufacturers to ***make additional sales*** at the 340B price. *See* Doc. 9-1 at 11-12; Doc. 29-1 ¶¶ 7-10. If Chapter 288 regulated only post-sale delivery, as the

Attorney General suggests, it would have no effect because AbbVie would simply decline to accept orders for transfer to non-designated contract pharmacy locations. The point is to compel AbbVie to enter into a sale in the first instance.

***Preemption.*** *Frey* also fails to explain how a state law that fundamentally changes the eligibility requirements for participating in a federal program can be constitutional. Instead, the opinion accepted the State's conclusory assertions that laws like Maine's (and Rhode Island's) merely regulate the practice of pharmacy. Op. at 15–17. That is incorrect. *See* Doc. 29 at 7. Chapter 288 attaches to congressionally mandated requirements for a federal program, and leverages those federal requirements to impose new state-law obligations that Congress decided not to.

Nor does *Frey* reasonably explain how Maine's parallel enforcement scheme, or its claims data prohibitions, can be constitutional. The federal ADR system is supposed to be the ***exclusive*** forum for 340B pricing disputes. *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110 (2011). Here too, *Frey* held that there was no conflict because federal law regulates price and the state law regulates delivery. Op. at 26. But again, that distinction is incorrect. Maine's law (and Chapter 288) mandates delivery ***at a particular price***. There is no dispute at all that AbbVie delivers its drugs at commercial prices to pharmacies that purchase them. Doc. 9-2 ¶ 7(b).

Further, claims data prohibitions are unlawful for the related reason that they impede manufacturers' access to the federal ADR system. *Frey* faulted AbbVie for not proving (at the preliminary injunction stage) that claims data is necessary for conducting an audit and then commencing an ADR proceeding. *See* Op. at 26–27. That holding is procedurally problematic and substantively specious. Procedurally, the evidence before the *Frey* court was that claims data is critical for AbbVie's ADR access. *See Frey*, Doc. 15-1 ¶¶ 21–24. Substantively, the 340B

statute requires an audit before a manufacturer can bring an ADR claim, and an audit requires supporting documentation. *See* 42 U.S.C. § 256b(d)(3)(B)(iv); 61 Fed. Reg. 65,406 (Dec. 12, 1996). *Frey* brushed this concern aside in favor of a policy assessment that fraud prevention is less important than maximizing hospital and pharmacy revenues. *See* Op. at 19 n.11.

***Takings.*** *Frey*'s Takings Clause analysis fails to account for the difference between a ***state***-imposed obligation and a purported ***federal*** benefit. It misdescribed AbbVie's argument as being that "each new regulatory condition must be accompanied by a separate benefit . . . ." *Id.* at 32. That is not what AbbVie argued in Maine and it is not what AbbVie is arguing here. AbbVie's point is that ***states*** do not get a free pass at private property merely because the private party previously agreed to participate in a ***federal*** program. Because laws like Rhode Island's compel additional sales beyond what federal law requires, the Takings Clause requires those new, state appropriations to be accompanied by new, state benefits. Rhode Island offers none.

***Vagueness.*** *Frey*'s vagueness analysis commits a cardinal sin of statutory interpretation: reading multiple terms and provisions to be superfluous. Rather than giving each term and provision independent meaning, *Frey* effectively held that "interfere" in one of the Maine law's provisions was not vague because it must mean the same thing as "deny, restrict, or prohibit …." *Id.* at 33–34 (brackets omitted). And it did not address the fact that Maine's statute (like Rhode Island's) contains a second, broader "interference" prohibition with no clear meaning or application.

This Court should avoid the errors in *Frey* and grant AbbVie's motion for preliminary injunction.

3

Dated: September 27, 2025　　　　　　　Respectfully submitted,

/s/ Joseph V. Cavanagh, III
Joseph V. Cavanagh, III (#6907)
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI  02903
Telephone:  (401) 831-8900
Facsimile:  (401) 751-7542
Email:  jvc3@blishcavlaw.com

Matthew S. Owen, P.C. (admitted *pro hac vice*)
Meredith M. Pohl (admitted *pro hac vice*)
Nick Bell (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Email: matt.owen@kirkland.com
　　　　meredith.pohl@kirkland.com
　　　　nick.bell@kirkland.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of the Court via the Court's CM/ECF system, which sent notification of such filing to all counsel of record by electronic means.

*/s/ Joseph V. Cavanagh, III*
Counsel of Record
